## In re Phillip Lee MOONEY and Deborah Anne Mooney, Debtors.

### No. RS99–14813MG.

United States Bankruptcy Court, C.D. California, Riverside Division.

May 10, 2000.

Jeffrey D. Hermann, Wayne E. Johnson, Brobeck, Phleger & Harrison, LLP, Los Angeles, CA, for Trustee.

Nancy J. Billings, Lynch & Wenzel, Law Corporation, Riverside, CA, for Debtors.

Sandra L. Bendon, Palm Desert, CA, Trustee.

**Memorandum of Opinion, Conclusions & Order**

MITCHEL R. GOLDBERG, Bankruptcy Judge.

### INTRODUCTION

On March 19, 1999 Phillip Lee Mooney and Deborah Anne Mooney ("Debtors") filed a petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330.[1] The first meeting of creditors was held on April 21, 1999, and was ultimately concluded on September 29, 1999. On October 19, 1999, Sandra L. Bendon, Chapter 7 Trustee ("Trustee") filed a timely objection to Debtors' claimed exemptions in two individual retirement accounts ("IRAs"). The IRAs contained $482,929.77.

### FACTUAL BACKGROUND

Debtor Phillip Lee Mooney is 54 years old and was employed by Southern California Edison for approximately 30 years. During his employment, both Mr. Mooney and the Edison company contributed to his Edison Retirement Plan. This Edison Retirement Plan was a fully exempt ERISA-qualified plan.[2] In May 1996, Mr. Mooney opted for early retirement and rolled over the retirement funds to the subject IRAs. There were no other funds or contributions made to these retirement accounts. Mr. Mooney, however, did opt to maintain a monthly retirement payment from one of the IRA funds and receives approximately $1,500 per month in retirement distributions. As to the remaining IRA, Mr. Mooney opted to be entitled to this fund at age 65. Mr. Mooney is not entitled to with-

1. Unless otherwise indicated, all references to "chapter" or "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

2. "ERISA" is the acronym for the Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq. The term "ERISA qualified," is not defined by the Bankruptcy Code, the Internal Revenue Code or ERISA. However, ERISA covers pension, profit sharing, stock bonus, and similar plans. The Internal Revenue Code qualifies an

ERISA plan if the plan satisfies the numerous requirements of IRC § 401(a) and related sections. 6A Norton Bankr. L. & Prac.2d § 156:5. In sum, for a plan to be "ERISA-qualified" the plan must be tax qualified under the Internal Revenue Code; be governed by ERISA and include an anti-alienation provision. *Id.* There was no dispute among the parties that Debtors' Edison Retirement Plan met the criteria for ERISA qualification.

draw any other funds without severe financial penalties and tax consequences.

Debtors initially claimed an exemption in the IRAs pursuant to California Code of Civil Procedure (hereinafter "CCP") § 703.140(b)(10)(E), but subsequently amended Schedule C to claim their exemptions pursuant to CCP §§ 704.115(b) and (d). A hearing was held on February 3, 2000 to consider Debtors' contention that the IRAs were entirely exempt under CCP § 704.115. This memorandum sets forth the reasons why this Court ruled in favor of the Trustee and held that the subject IRAs were not entirely exempt, but subject to the "extent necessary" determination as set forth in CCP § 704.115(e). An evidentiary hearing is scheduled for July 7, 2000 to determine the "extent necessary" issue. Therefore, this opinion and order constitute an interlocutory ruling that will become final following the outcome of the evidentiary hearing.

### DISCUSSION

### I. California Exemption Statutes

1. Exclusion v. Exemption

Upon the filing of a bankruptcy petition, an estate is created. This estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). However, Section 541(c)(2) of the Bankruptcy Code excludes from the property of the estate any property that is held in trust and subject to a restriction on transfer under applicable nonbankruptcy law. *See* 11 U.S.C. § 541(c)(2). To the extent an ERISA-qualified plan contains "applicable nonbankruptcy law" restrictions on alienation, then such plans will be excluded from the bankruptcy estate. *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). Therefore, ERISA plans are fully exempt from a bankruptcy trustee's or creditors' reach.

■ "[I]ndividual retirement accounts ... are specifically excepted from ERISA's anti-alienation requirement." *See Rawlinson v. Kendall (In re Rawlinson)*, 209 B.R. 501, 503 (9th Cir. BAP 1997) *quoting Patterson v. Shumate*, 504 U.S. 753, 763, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). As such, these plans are not excluded from the bankruptcy estate, and may be subject to the reach of the bankruptcy trustee or creditors. Under California law, IRAs may be exempted from creditor claims pursuant to either CCP §§ 703.140(b)(10)(E) or 704.115(a)(3).[3] *See*

---

**3.** Section 703.140 of CCP provides, in relevant part,

(b) The following exemptions may be elected ...
(10) The debtor's right to receive any of the following:
(E) A payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, *to the extent reasonably necessary* for the support of the debtor and any dependent of the debtor, unless all of the following apply:
(i) That plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under the plan or contract arose.
(ii) The payment is on account of age or length of service.
(iii) That plan or contract does not qualify under Section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986.

CCP § 703.140(b)(10)(E) (added by Stats. 1984, ch. 218, § 2; amended by Stats.1995, ch. 196 (S.B.832), § 1, effective July 31, 1995) (emphasis added).

Section 704.115 of CCP provides, in relevant part,

(a) As used in this section, *"private retirement plan"* means: ..
(1) Private retirement plans, including, but not limited to, union retirement plans.
(2) Profit-sharing plans designed and used for retirement purposes.
(3) Self-employed retirement plans and *individual retirement annuities or accounts provided for in the Internal Revenue Code...*, as amended, ..., to the extent the amounts held in the plans, annuities, or accounts do not exceed the maximum amounts exempt from federal income taxation under that code.
(b) All amounts held, controlled, or in process of distribution by a private retirement

*also, In re McKown,* 203 F.3d 1188 (9th Cir.2000), *affirming In re McKown,* 203 B.R. 722, 724 (Bankr.E.D.Cal.1996) (discussing IRAs in the context of CCP § 703.140(b)(10)(E)); *In re Switzer,* 146 B.R. 1, 5 (Bankr.C.D.Cal.1992) (discussing IRAs in the context· of CCP § 704.115(a)(3), (e)).

2. Election of the Appropriate CCP Provision.

Until the recent decision of *In re McKown,* it was unclear whether IRAs were even covered under CCP § 703.140(b)(10)(E). *See In re McKown,* 203 F.3d 1188 (9th Cir.2000), *affirming In re McKown,* 203 B.R. at 723 (where debtors' IRA was established with funds "rolled-over" from a terminated employer sponsored retirement plan and, relying on the case of *Carmichael v. Osherow (In the Matter of Carmichael),* 100 F.3d 375 (5th Cir.1996), the Ninth Circuit determined that such funds were covered under CCP § 703.140(b)(10)(E)); *see also, Rawlinson v. Kendall (In re Rawlinson),* 209 B.R. 501 (9th Cir. BAP 1997).

Debtors were entitled to elect their exemptions under either CCP § 703.140 or

plan, for the payment of benefits as an annuity, pension, retirement allowance, disability payment, or death benefit from a private retirement plan are exempt....
(d) After payment, the amounts described in subdivision (b) and all contributions and interest thereon returned to any member of a private retirement plan are exempt.
(e) *Notwithstanding subdivisions (b) and (d),* except as provided in subdivision (f), *the amounts described in paragraph (3) of subdivision (a) are exempt only to the extent necessary* to provide for the support of the judgment debtor when the judgment debtor retires and for the support of the spouse and dependents of the judgment debtor, taking into account all resources that are likely to be available for the support of the judgment debtor when the judgment debtor retires....
CCP § 704.115(a)(3), (b), (d), and (e) (amended by Stats.1992, ch. 163 (A.B.2641), § 42, operative January 1, 1994) (emphasis added).
Both CCP provisions were amended in 1999 to reference Section 408A of the Internal Revenue Code. CCP §§ 703.140, 704.115

CCP § 704.115. Since CCP § 703.140(b)(10)(E) incorporates both private retirement plans and IRAs under one provision, subjecting both private retirement plans and IRAs to the "extent reasonably necessary" determination, had Debtors chosen to keep their exemption under this provision, there would be ·no question that the subject IRAs would be exempt but only to the extent reasonably necessary for Debtors' support.

Because Debtors amended Schedule C to claim exemptions under CCP § 704.115, Debtors assert that the exemption issue is not so easily resolved—particularly as it pertains to funds rolled-over into an IRA from a fully ERISA-qualified private retirement plan. This is because the CCP § 704.115 exemption statute separates out private retirement plans from IRAs and annuities. *See* CCP § 704.115(a)(1)-(3). Under this statutory scheme, the California legislature provided a full exemption for private retirement plans, but not for IRAs. The argument posed by Debtor is that an IRA rollover from a fully qualified ERISA plan is not a "traditional" $2,000 per year IRA, but remains, in reality, a private retirement plan that enjoys the

(amended by Stats.1999, ch. 98 (S.B.469), § 1). Neither code provision identifies the effective date of these amendments. However, the bill amending these CCP sections was submitted during regular session and was approved by the Governor on July 13, 1999. *Id.* According to the California Constitution, "... a statute enacted at a regular session shall go into effect on January 1 next following a 90-day period from the date of enactment of the statute...." CAL. CONST. art. 4, § 8(c)(1). As such, the 1999 amendments to CCP §§ 703.140 and 704.115 became effective on January 1, 2000. The monies from the Debtors' private retirement plan were rolled-over into IRAs in May 1996. Further, Debtors filed for bankruptcy in March 1999. Both events occurred before the 1999 amendments to CCP §§ 703.140 and 704.115 were either codified or effective. While the 1999 amendments are not controlling in this case, the 1999 amendments are useful in determining the legislative intent of the exemption statutes as they pertain to rolled-over IRAs. *See discussion, infra.*

same rights as it did prior to rollover as long as the Debtor continues to maintain the integrity of the plan by not adding any future deposits to the plan. This argument has never been discussed in any reported cases.

## II. Rolling-over

 Trustee argues that once an ERISA-qualified retirement plan is rolled-over into an IRA, the California Code does not allow it to retain its fully-exempt ERISA characteristics and it must be governed, as any other IRA would be governed, by CCP § 704.115(a)(3) and (e). Debtors contend, however, the these types of IRA rollovers are fully exempt under the plain language of CCP § 704.115(b) and (d). Subdivisions (b) and (d) control any and all private retirement accounts. Debtors argue that the language of CCP § 704.115 subdivision (b) "in the process of distribution" means that all amounts paid out from a private retirement account remain exempt because the amounts were exempt originally. This interpretation, Debtors argue, is supported further by the language in subdivision (d) which provides that the amounts identified in subdivision (b) and returned to any member of a private retirement plan are exempt. Debtors contend this holds true whether the monies were paid out directly to debtors and then deposited into a personal bank account, or whether the monies were rolled-over into an IRA. Therefore, Debtors assert the distributions from the fully exempt ERISA-qualified Edison Retirement Plan (a private retirement plan) transferred into a rollover IRA remains fully exempt.

To support their position, Debtors seemingly rely on The Legislative Committee Comment, following the 1982 amendment to CCP § 704.115. That comment states "[t]he exemption provided in subdivision (d) applies whether money received by the

judgment debtor is in the actual possession of the recipient or has been deposited." *See* 1981–1982 Cal. Legis. Serv. 5159 (West). The Legislative Committee Comment then cites to CCP § 703.080 which references the tracing of exempt funds. *Id.* Section 703.080 of California Code of Civil Procedure provides that the tracing of exempt funds, however, is subject to any limitation provided in a particular exemption. The limitation on IRAs under CCP § 704.115 is clearly set forth in subdivision (e). The first sentence in subdivision (e) states simply and clearly, "[n]otwithstanding subdivisions (b) and (d) ... the amounts described in paragraph (3) of subdivision (a) are exempt only to the extent necessary...." Debtors urge this court to disregard subdivision (e) and, instead, rely solely on subdivisions (b) and (d). This argument is contrary to the plain language of subdivision (e) which specifically cites to and modifies subdivisions (b) and (d).

To accept Debtors' contention would require this Court to rule that the California legislature, without any clear enunciation, intended to treat IRAs rolled-over from a private retirement account, differently from other IRAs. While Debtor's argument has a substantial amount of logic to support its general theme that rollovers from fully exempt plans should remain fully exempt, this Court is not prepared to accept such an interpretation, based on the legislative and case history, as set forth below.

1. Exemption of IRAs under CCP § 704.115—The Statutory Construction Argument.

In *McKown* and *Rawlinson*, the courts relied on the statutory construction argument discussed in *Carmichael*. In *Carmichael*, debtors claimed exemptions pursuant to the federal exemption statute of Section 522(d)(10)(E).[4] The court in *Car-*

4. The language of Section 522(d)(10)(E) is identical to the language of CCP

§ 703.140(b)(10)(E) and provides, in relevant part,

*michael* determined "that for purposes of § 522(d)(10)(E), an IRA is a 'similar plan or contract.'" *In the Matter of Carmichael,* 100 F.3d at 378. Among the reasons set forth to support its decision, the court in *Carmichael* looked to the statutory construction of subparagraph (d)(10)(E)(iii).

> "... [B]ecause the phrase 'similar plan or contract' in subsection (iii)'s specific exception to the exemption includes IRAs that qualify, that same phrase used in the general exemption of paragraph (d)(10)(E) must likewise include qualifying IRAs."

*Id.* "Were that not so, there would be no exempt § 408 plans or contracts from which non– § 408 plans or contracts could be exceptions." *Id.* Since the statutory reference to 26 U.S.C. § 408 in Section 522(d)(10)(E) encompasses all subsections pertaining to IRAs, the Ninth Circuit in *McKown* queried "[w]hy would Congress talk about IRAs in the exception unless it included IRAs in the rule?" *In re McKown,* 203 F.3d 1188, 1190 (9th Cir. 2000). The Ninth Circuit concluded that "an IRA qualifies for exemption under statutory language tracking 11 U.S.C. § 522(d)(10)(E), including the California language." *Id.*

Here, this Court must first determine whether the California legislature intended to incorporate rolled-over IRAs within the purview of CCP § 704.115(a)(1), (a)(2), or (a)(3). Subdivision (a)(2) deals with profit-sharing plans and is wholly inapplicable. Subdivision (a)(1) encompasses private retirement plans, such as Mr. Mooney's Edison Retirement Plan. In light of the statutory construction argument set forth below, it is improbable that the legislature intended to include the rollover IRAs, created from Mr. Mooney's Edison

> "[t]he following property may be exempted... (10) the debtor's right to receive... (E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support of the debtor and any dependents of the debtor, unless—

Retirement Plan, within the purview of subdivision (a)(1). As did the court in *Carmichael,* this Court will first turn to the language of the relevant CCP provisions and carefully examine the cross-references to various Internal Revenue Code provisions.

Since the subject accounts are IRAs, subdivision (a)(3), which clearly incorporates IRAs, would seemingly control this analysis. The California legislature specifically encompassed "individual retirement annuities or accounts provided for in the Internal Revenue Code...." under subdivision (a)(3). By so doing, the California legislature exempted IRAs. The question is whether the exemption is only to the "extent necessary" as permitted under subdivision (e). *See* CCP § 704.115 (added by Stats. 1982, ch. 1364 p. 5159, § 2, operative July 1, 1983 and amended by Stats. 1992, ch. 163 (A.B.2641), § 42 operative Jan. 1, 1994) (West 1987 & Supp.2000).

Recently, the California legislature amended CCP § 704.115. The amendment changes subdivision (a)(3) to now reference the Internal Revenue Code of *1986,* rather than the Internal Revenue Code of 1954. *Id.* However, what is of greater relevance is that the amendment specifically modifies the preceding general reference to "individual retirement accounts" *"[to include] individual retirement accounts qualified under Section 408 or 408A of that code".*

Section 408A of Title 26 pertains to Roth IRAs. Section 408, of that same title, defines the term "individual retirement account" to mean

> "a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries, but

> (i) such plan or contract was established by ... an insider that employed the debtor...;
> (ii) such payment is on account of age or length of service; and
> (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986...."

only if the written governing instrument creating the trust meets the following requirements:

(1) *Except in the case of a rollover contribution* described in subsection (d)(3), in section 402(c), 403(a)(4) or 403(b)(8), no contribution will be accepted unless it is in cash, and contributions will not be accepted for the taxable year in excess of $2,000.00 on behalf of any individual. . . ."

26 U.S.C. § 408(a)(1) (emphasis added). Subsection (d)(3) referenced in 26 U.S.C. § 408(a)(1) pertains to tax treatment of distributions for rollover contributions.[5] This amendment signifies that the California legislature intended to specifically exempt specific types of IRAs and annuities under CCP § 704.115(a)(3). Given that the Internal Revenue Code's definition of "individual retirement account" excepts rollover IRAs from the $2,000 contribution limit, then 26 U.S.C. § 408 can easily be interpreted to encompass rolled-over funds. This Court can only conclude that the California legislature understood this when it elected to insert the amendment.

The Court's position is further supported by an examination of the word "including" as used in the 1999 Amendment and an examination of the change referencing the Internal Revenue Code of 1954 to the Internal Revenue Code of 1986. First, the word "including" precedes the reference to Section 408 and 408A of the Internal Revenue Code in the 1999 Amendment to CCP § 704.115(a)(3). The word "including", therefore, acts to define—by way of example—this subdivision's reference to "individual retirement annuities or accounts."

Second, the California legislature's change referencing "the Internal Revenue Code of 1954 as amended," to "the Internal Revenue Code of 1986, as amended," provides the best support that the 1999 Amendment to CCP § 704.115(a)(3) merely acts to better clarify and define "individual retirement annuities or accounts." The historical and statutory notes to the relevant rollover provisions of 26 U.S.C. § 408(a)(1) and 408(d)(3) indicate numerous amendments.[6] The 1986 Amendments to the Internal Revenue Code did not significantly alter the treatment of rollover contributions to IRAs. Noteworthy, however, is that pre–1986, the 26 U.S.C. § 408 rollover contribution provisions were already in existence in some form. Further, because Debtor Phillip Mooney rolled-over the monies from his ERISA-qualified private retirement plan in May 1996, this Court need not look any earlier than the 1986 Amendments to the Internal Revenue Code to conclude that the California legislature, by generally referencing "the Internal Revenue Code of 1954 as amended," contemplated rollover contributions to IRAs to fall within the definition of "individual retirement accounts" under CCP § 704.115(a)(3).

While the 1999 Amendments to CCP § 704.115, effective January 1, 2000, do not control the facts in this case,[7] the 1999 Amendments lend support to this Court's position that the California legislature merely set out to clarify the definition of "individual retirement accounts." In other words, the California legislature put into practice the often quoted maxim of statutory construction that states: "had the legislature intended to include such language, it could have so stated."[8] The

---

5. 26 U.S.C. § 402(c) outlines the rules applicable to rollovers from exempt trusts and Sections 403(a)(4) and 403(b)(8) of that title reference annuities.

6. *See* 26 U.S.C.A. § 408 1986 Amendment Subsec. (d)(3)(A)(ii). Pub.L. 99–514, § 1875(c)(8)(A). This provision basically struck the language that referred to trusts created by self-employed individuals who are

treated as employees. This amendment, therefore, is not relevant to this case.

7. *See* n. 3.

8. This is not to say that the California legislature has expressly exempted rollovers into IRAs. *See e.g.,* Tex. Property Code § 42.0021 and Ind.Code § 34–2–28–1 for examples where state legislatures have expressly ex-

California legislature has not changed its position, but has merely offered clarification.

2. Exemption of rolled-over IRAs under CCP § 704.115(a)(3)—Policy Considerations.

As courts have pointed out, at least under the context of CCP § 703.140(b)(10)(E), the California legislature has recognized the inequities of not permitting IRAs, particularly in the context of "roll-overs," from being exempted.[9] This Court recognizes that the issue is not even remotely the same, since it is clear that under CCP § 704.115, Debtors will either be entitled to a full exemption under CCP § 704.115(a)(1), (b) and (d) or an exemption under CCP § 704.115(a)(3) that is limited to the "extent reasonably necessary" for support under subdivision (e).

Debtors further argue that because CCP § 703.140(b)(10)(E) merely parrots the federal exemption statute of Section 522(d)(10)(E), the California legislature did not necessarily intend rollover contributions from fully ERISA qualified plans to IRAs to be subjected to the same "reasonably necessary" determination that other IRAs are subjected to under CCP § 704.115(a)(3) and (e)—as that would make the two statutes redundant. Such a position not only ignores the statutory construction argument discussed, *supra*, but seems to ignore the distinction of an individual's right of control in an IRA versus the much more limited rights of an individual participating in a fully ERISA-qualified retirement plan.

Because so many state codes reference the Internal Revenue Code, bankruptcy courts have been forced to interpret the Internal Revenue Code and ERISA in order to identify which specific retirement accounts are eligible for full or partial protection against creditors. Patricia E. Dilley, Hidden in Plain View: The Pension Shield Against Creditors, 74 IND. L.J. 355, 416 (1999). This is particularly true when state legislatures, as California's, merely cross-reference Section 408 of the Internal Revenue Code. "The underlying assumption of state legislatures in using the IRA cross-reference 'short-hand' ... appears to be that IRAs are equivalent in most essential respects to taxqualified employer-provided pension plans and thus should receive roughly the same treatment." *Id.* at 418. However, they are not. *Id.* While the tax treatment of IRAs is "generally

empted amounts rolled from a qualified plan. However,

"[t]he fact that a statute does not expressly exempt funds rolled over from other qualified retirement plans into IRAs does not mean that such funds are not exempt as the terms of the statute may be broad enough to cover funds rolled into individual retirement accounts such as in statutes, of which there are many, where the exemption provides that any money or other assets payable to a participant or beneficiary in a retirement plan which is qualified under ... § 408 of the Internal Revenue Code shall be exempt since such a statute can easily be interpreted as including rolled-over funds."

Andrew M. Campbell, *Individual Retirement Accounts as Exempt Property in Bankruptcy*, 133 A.L.R. Fed. 1 (1996). CCP § 704.115(a)(3) is a broadly written statute that falls within this category.

**9.** While inapplicable to this case, the Fifth Circuit *Carmichael* discussion on the resulting inequities if rolled-over IRAs were held non-exempt under CCP § 703.140(b)(10)(E) is noteworthy.

"Indeed to hold otherwise would be to create a trap for the unwary in those frequent instances in which funds from other exempt plans are 'rolled over' into IRAs when those other plans terminate or when employment ceases. After all, Congress has, in the overall retirement scheme of the IRC, selected the IRA to serve as a sort of universal conductor through which transfers must pass if they are to avoid the rocks and shoals of inadvertent taxable events."

*In the Matter of Carmichael*, 100 F.3d at 378. Indeed, for the federal and state governments to permit IRAs to act as the "universal conductor" for money transfers, but then determine, either by federal or state exemption statutes, that IRAs are non-exemptible is, at the very least, an unexplainable dichotomy. Fortunately, the Ninth Circuit has settled this issue and determined that IRAs are indeed covered under CCP § 703.140(b)(10)(E).

based on the same deferral of consumption, deferral of tax rationale that is applicable to qualified pension plans ..., pre-retirement access to amounts held in IRAs is generally easier to obtain than for qualified plans...." *Id.* at 416. Therefore, while IRAs may be characterized as retirement vehicles, "they are in fact merely tax shelters that may nor may not serve as a source of income in retirement." *Id.*

Further, while an IRA may be exemptible under the statute, it may not be exempt if the IRA was set up to defraud creditors. To this end, courts examine the degree of control the debtor has over its plan. *See In re Rawlinson,* 209 B.R. at 507 (concluding that even though a debtor can withdraw funds from an IRA at will, such conduct does not rise to the degree of control that would take IRAs out of the purview of CCP § 703.140(b)(10)(E)); *see*

*also In re McKown,* 203 B.R. at 725 (stating that "[w]hile it is true a debtor can withdraw funds deposited into an IRA, premature withdrawal ... carries a penalty," as such the court held that IRAs come within the scope of CCP § 703.140(b)(10)(E)); *But see In the Matter of Carmichael,* 100 F.3d at 378–379 (concluding that "[c]ontrol is a concept applicable to the determination of whether an asset belongs to the estate, a determination that is made before the question of exemption is ever reached," but also pointing out that as long as the right to receive payment is triggered "on account of illness, disability, death, age, or length of service," then IRAs are exemptible "with or without an anti-alienation requirement.").[10]

The foregoing, does not suggest that either the legislature or the courts ignored

---

**10.** The comment in *Carmichael* that the issue of control is irrelevant in the exemption context must be addressed. Since control is an issue determined when the bankruptcy court is examining whether a debtor's retirement plan is property of the estate or possibly excluded from the estate, this question of control would not likely arise in the context of a state court examination of exemptions claimed under CCP § 704.115. Indeed, the Court of Appeal stated, in relevant part,

"[t]here is no analogy to be drawn with bankruptcy exemptions.... Whether or not an employee's contribution may be property of the bankruptcy estate under federal law is therefore not relevant to the determination of what is exempt under Code of Civil Procedure section 704.115. The dispositive inquiry under the California statute is whether the plan was designed and used for retirement purposes."

(*citation omitted*); *Schwartzman v. Wilshinsky,* 50 Cal.App.4th 619, 627–628, 57 Cal. Rptr.2d 790 (2nd Dist.1996) (discussing CCP § 704.115(a)(3) as it relates to IRAs and an employer's profit-sharing plan). The trial court denied Wilshinsky's "claim of exemption as to all funds held in his IRA, except an amount determined to be required for the payment of taxes, and as to all employee contributions and matching employer contributions held in the 401K profit-sharing account established by [Wilshinsky's] employer." *Id.* at 622, 57 Cal.Rptr.2d 790. Wilshinsky appealed arguing that the trial court erred in interpreting the terms of

"self-employment plan" and "individual retirement account" as used in subdivision (a)(3). *Id.* The Court of Appeal affirmed the trial court judgment as to the IRA, and reversed as it related to the employer's profit-sharing plan. The Court of Appeal discussed at length how the 401K was a private pension plan, exempt from execution, since by its terms, was created for the benefit of its employees, not just appellant as an individual. *Id.* at 630, 57 Cal.Rptr.2d 790. "[E]ven a very loose construction of [subdivision (a)(3)] would not permit an interpretation of 'self-employed retirement plan,' 'individual retirement account,' or 'individual retirement annuity' to mean employee contributions to an employer created and administered profit-sharing plan designed for retirement purposes." *Id.*

This case offers little except to indicate that control—to the extent the court is determining whether the plan remains property of the estate—is obviously not a factor that is to be considered by the state courts in analyzing the nature of the exemption under CCP § 704.115. However, in the context of bankruptcy this inquiry must be done on the front end. Since the dispositive inquiry under CCP § 704.115 is whether the plan was designed and used for retirement purposes, this Court is required to examine the nature of the rolled-over IRAs to determine whether these rolled-over IRAs were designed to be used as a private retirement plan or not. This Court concludes the subject IRAs were designed to be used as an IRA. *See* discussion, *infra.*

the potential for abuse. As the cases pointed out, Section 522(d)(10)(E) and the California analog CCP § 703.140(b)(10)(E) built in a safeguard by requiring courts to determine the extent the funds in question are "reasonably necessary" to support debtors and their dependents. *In the Matter of Carmichael,* 100 F.3d at 380; *see also In re Metz,* 225 B.R. at 179; *In re Rawlinson,* 209 B.R. at 508. In this way, courts are able to prevent debtors from stashing away assets in fraud of creditors. *In the Matter of Carmichael,* 100 F.3d at 380. There is no logical reason why the California legislature would only be concerned with abuse issues surrounding rollover IRAs under CCP § 703.140(b)(10)(E), but not have the same concerns under CCP § 704.115. A plain reading of CCP § 704.115(a)(3) and (e) tends to support this Court's position that the California legislature understood this potential for abuse, particularly in rollover contribution situations and, therefore, appropriately limited the exemption of all IRAs. This Court must conclude that the California legislature intended CCP § 704.115(a)(3) to incorporate IRAs rolled-over from fully ERISA-qualified plans.

3. Relevant Case Law Specifically Addressing CCP § 704.115.

Debtors rely on *Friedman v. Broach (In re Friedman),* 220 B.R. 670 (9th Cir. BAP 1998) and *DeMassa v. MacIntyre (In re MacIntyre),* 74 F.3d 186 (9th Cir.1996) to support their position. In *Friedman,* debtor borrowed funds from a private retirement plan. The Ninth Circuit BAP held that these borrowed funds were not exempt under California law since the loan was not payment of benefits, and, thus, the funds lost their exempt status when they were loaned to debtor. *In re Friedman,* 220 B.R. at 671. The court stated that if payments are made to a member of an annuity or pension, then such monies are exempt under CCP § 704.115(d) because the payments are from funds described in

subdivision (b) of that section. *Id.* The court in *Friedman* held that subdivisions (b) and (d) did not create an exemption for funds loaned from a pension plan because the proceeds of such loans are not "payment of benefits" of the pension plan that fall within the meaning of CCP § 704.115(b). *Id.* at 672. Debtors contend, however, that *Friedman* is directly analogous to the facts in this case by arguing that the funds distributed or rolledover into the IRAs, upon Debtor Phillip Mooney's retirement, were payment of retirement benefits. However, the critical distinction Debtors fail to grasp is that while the funds were distributed from a private retirement plan, Debtors chose to place those funds into a different type of retirement plan, an IRA. Once the Debtors placed these payments from their private retirement funds into the IRAs, the funds could only be characterized as IRAs and can only be governed by CCP § 704.115(a)(3) and (e). Curiously, it would seem that had Debtors opted to receive disbursements and placed these payments of retirement benefits into their personal bank accounts, and opted to endure the tax consequences and penalty, then subdivisions (b) and (d), without reference to the "extent necessary" determination of subdivision (e), may have controlled.

In *MacIntyre,* the debtors were physicians employed by a nonprofit hospital. *In re MacIntyre,* 74 F.3d at 187. The debtors had section 403(b) retirement plan annuities, as provided for in the Internal Revenue Code. *Id.* The court stated "[t]he purpose of section 704.115 exemption for the corpus of a private retirement plan is to safeguard a stream of income for retirees at the expense of the bankruptcy creditors." *Id.* at 188. The court in *MacIntyre,* ultimately held that the private retirement plans created under 26 U.S.C. § 403(b)[11] were fully exempt under CCP § 704.115(a)(1) and (b), because the plans were neither self-employed retirement

---

**11.** Section 403 of the Internal Revenue Code pertains to annuities.

plans nor IRAs. *Id.* The court recognized, however, that "[t]here may be no logical reason why a [debtor] who works for a non-profit [organization] should be treated differently than one working for a [profit organization] who has an IRA, or one who has a self-employed retirement plan, but that is what the clear language of CCP § 704.115 provides." *Id.* The Ninth Circuit ultimately concluded that because the particular investment device utilized by debtors in *MacIntyre* was not an IRA, then subdivision (e) was not applicable. *Id.*

Trustee counters by arguing that neither of the cases relied upon by Debtors had anything to do with "rollover" IRAs. This Court agrees that the cases relied upon by the Debtors are not directly on point and are not instructive to the facts at hand. As such, this Court must look elsewhere.

In 1992, two bankruptcy cases out of California touched upon the IRA rollover issue. *In re Reid,* 139 B.R. 19 (Bankr. S.D.Cal.1992); *In re Switzer,* 146 B.R. 1 (Bankr.C.D.Cal.1992). Both of these cases suggest that funds rolled over into an individual retirement account from other types of retirement plans are exempt from the bankruptcy estate pursuant to state exemption statute CCP § 704.115, which expressly exempts IRAs but not rollovers into IRAs.

The debtor in *Reid* voluntarily terminated his employment, but failed to request a distribution from his ERISA-qualified plan. *In re Reid,* 139 B.R. at 20. In *Reid,* the court rejected the debtor's argument that his interest in a 401K plan was essentially the same as an IRA, subject to CCP § 704.115(e)—the "reasonably necessary determination".[12] *Id.* at 20–21. The debtor based his argument on the fact that his distribution under the Plan was eligible for rollover into an IRA account. *Id.* The court noted that this argument was without merit since an ERISA qualified plan is governed by 26 U.S.C § 401(a), while an

IRA is governed by 26 U.S.C. § 219. *Id.* at 21. Additionally, the court recognized that rollovers do not happen automatically since the money must be first distributed to the employee, who then must transfer the funds to an eligible plan within 60 days. *Id.* Because no distribution was ever made, debtor's interest in the plan could not be considered an IRA, but "had the debtor rolled over his interest in the plan to an IRA, it may have qualified as a [sic] exemption." *Id.* The "may" in the preceding sentence suggests that the IRA would have been subject to a subdivision (e) determination.

In *Switzer,* the case did not need to reach the "rollover" issue as no evidence was introduced by debtors to indicate that the plans were private retirement or profit-sharing plans, under CCP § 704.115(a)(1) or (2), at the time of the bankruptcy. The company where debtor was once employed made a lump sum distribution from the private retirement plan in the amount of $167,897.34 to debtor. *In re Switzer,* 146 B.R. at 2. Debtor deposited the monies into a Fidelity account and listed this account in his schedules as a "Rollover Keogh." *Id.* No evidence was presented that the funds were placed into Keogh plans or IRAs. *Id.* No evidence was presented that the plan contained an enforceable restriction on transfer provision that would permit them to be excluded from the bankruptcy estate under Section 541(c)(2). *Id.* at 4. Additionally, no evidence was presented to indicate that the plans were fully exempt as private retirement or profit-sharing plans at the time of the bankruptcy pursuant to CCP § 704.115(a)(1) or (2). *Id.* at 5, n. 6. The court, therefore, concluded that all of the debtors' retirement plans were "IRAs that may be exempted from creditor claims pursuant to the terms and limitations of CCP § 704.115." *Id.* at 5.

Here, as in the *Switzer* case, Debtors' amended schedules claimed exemptions for

12. A 401(K) plan is an ERISA qualified plan established by an employer.

"IRAs from Pension Accounts." According to Debtors' exhibits, which were not supported by declaration, Debtor authorized Edison to rollover monies to his Paine Webber Account on May 25, 1996. No evidence was presented to determine whether the pension funds were rolled over into an IRA account that retained an ERISA-qualified character. Therefore, under either *Reid* or *Switzer*, and without additional evidence that the IRA retained ERISA-type qualifications, a rollover into an IRA would be subject to CCP § 704.115(a)(3), and hence, subject to the "extent necessary" determination under subdivision (e).

The case of *In re Rogers*, 222 B.R. 348 (Bankr.S.D.Cal.1998), while not dealing with rolled-over funds, does provide some insight into the legislative scheme of CCP § 704.115(a)(1)-(3). The debtor in this case had borrowed against the non-exempt portion of the equity in her home and put the proceeds in a life and health insurance annuity. *In re Rogers*, 222 B.R. at 348. The debtor claimed the exemption in the annuity under CCP § 704.115(a)(3) in reliance on the Ninth Circuit decision of *In re Bernard*, 40 F.3d 1028 (9th Cir.1994), *cert. denied* 514 U.S. 1065, 115 S.Ct. 1695, 131 L.Ed.2d 559 (1995). *Id.* at 349. The Ninth Circuit in *Bernard* held that "[a]nnuities are exempt under [CCP § 704.115(a)(3)] only to the extent necessary to provide for the support of the debtor and the debtor's spouse..." *In re Rogers*, 222 B.R. at 350, *citing In re Bernard*, 40 F.3d at 1032–1033. The bankruptcy court in *Rogers* rejected the argument that *Bernard* supports debtor's position since in *Bernard*, "[t]he issue of whether the annuity qualified under CCP § 704.115(a)(3) was not raised." *Id.* at 351. The bankruptcy court concluded, as this court concluded, that "[t]o qualify for [an] exemption under § 704.115(a)(3) the annuity [or IRA] must be one provided for in the Internal Revenue Code..." *Id.* at 350 The court in

*Rogers* determined that because debtor's annuity contract did not meet the elements of an individual retirement annuity under the relevant Internal Revenue Code provision governing annuities, 26 U.S.C. § 408(b), then the trustee's objection to debtor's claimed exemption under CCP § 704.115(a)(3) must be sustained. Similarly, this Court has concluded that Debtors' IRAs qualify as "individual retirement accounts," as defined by the California legislature, which requires this court to reference the applicable Internal Revenue Code provision of 26 U.S.C. § 408(a). *Rogers* confirms that the California legislature placed express limits, limits that are defined by the relevant Internal Revenue Code provisions, on the types of plans, IRAs and annuities to be controlled by CCP § 704.115(a)(3). *Id.* at 351.

Additionally, the court in *Rogers* attempted to see whether debtor's annuity "might fit another exemption." *In re Rogers*, 222 B.R. at 351. In so doing, the court recognized that "whatever the legislature may have meant to encompass within (a)(1) [the meaning of 'private retirement plans'], it does not extend to protect anything a debtor unilaterally chooses to claim as intended for retirement purposes." *Id.* The court went on to note that there is a "hierarchy or priority of exemption established by the legislature" where self-funded IRAs and annuities are only exempt to the extent necessary for support, while profit-sharing plans "designed and used for retirement purposes are fully exempt, ..., thus illustrating a higher order of preference." *Id., referencing Schwartzman v. Wilshinsky*, 50 Cal. App.4th 619, 57 Cal.Rptr.2d 790 (2nd Dist. 1996);[13] *see also, Cheng v. Gill (In re Cheng)*, 943 F.2d 1114, 1117 (9th Cir.1991) ("stating that the legislative history indicates that the policy behind section 704.115(e) is to limit the exemption for plans that are controlled by one person...."). "If a person were permitted to claim any asset as a 'private retirement

---

**13.** *See* n. 9, *supra.*

plan', and thus fully exempt, the 'necessary for support' limitation for plans under (a)(3) would be eviscerated." *In re Rogers*, 222 B.R. at 351. Debtors are essentially seeking to extend the definition of "private retirement plans" under subdivision (a)(1) to include roll-over IRAs. In so doing, the Debtors are ignoring the priority of exemption established by the legislature and attempting to eviscerate the "necessary for support" limitation, at least for rollover IRAs under subdivision (a)(3). Debtors attempt to do this even though the power of control the Debtors acquired upon rollover are equal to a traditional self-created IRA account—albeit with a lot more money. This Court is not prepared to grant such a request. It will be up to the California Legislature, should it wish to fully exempt funds from ERISA qualified private retirement plans, subsequently rolled over to an IRA, to enact such clarifying legislation in order to protect its citizens in the ever evolving employment market.

### CONCLUSION

In conclusion and for the reasons set forth above, this Court must find for the Trustee. Objection sustained. The rollover IRAs are exempt only to the extent reasonably necessary per CCP § 704.115(a)(3) and (e). An evidentiary hearing will be conducted on July 7, 2000 to resolve the remaining issues.

### ORDER

Therefore, it is

ORDERED, the objection is sustained and the rollover IRAs are exempt to the extent reasonably necessary pursuant to CCP § 704.115(a)(3) and (e).